CITY OF SUNSET VALLEY, Appellant,

v.

AUSTIN INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 11993.

Court of Civil Appeals of Texas, Austin.

Dec. 6, 1972.

Rehearing Denied Jan. 3, 1973.

John Dennis, Austin, for appellant.

Thomas E. Edmondson, Austin, for appellee.

SHANNON, Justice.

This appeal concerns an effort by Appellee, Austin Independent School District, to locate and build a large sports center and a school bus depot and garage in an area zoned residential by Appellant, the City of Sunset Valley, a general law city. Upon refusal by appellant to issue a building permit, appellee filed a declaratory judgment suit in the district court of Travis County requesting a ruling that, as to it, the zoning ordinance of appellant was void and of no force and effect, and for an injunction against enforcement of that ordinance.

The case was tried by the court, and judgment was entered for appellee. The judgment decreed, in effect, that the school district was not subject to the zoning authority of Sunset Valley and enjoined appellant from enforcing its zoning ordinances as to appellee. We will reverse that judgment.

Sunset Valley was incorporated as a general law city, and at the time of trial its population was about 250 persons. That city is residential in character, and its zoning ordinance, No. 13 and 13–A, contemplates only residential construction.

The site of appellee's proposed improvements consists of about 62 acres, all within appellant's municipal boundaries. Appellee proposes to build on that location athletic and bus garaging facilities adequate to serve most of appellee's eighteen junior high and senior high schools. Only one school, Sunset Valley Elementary, is located within appellant's boundaries. The construction projected by appellee is a football stadium to seat 15,000 persons; a field house with a seating capacity of 5,000 to 7,000 persons; and an athletic field with at least one baseball diamond; and a school bus facility to serve as a repair, maintenance, and garaging center. Apparently, the balance of the acreage would be paved and used for parking automobiles of participants and spectators at the athletic contests. Appellee's plans do not include the construction on the site of any classrooms or laboratories or other structures primarily devoted to academic and educational purposes.

Prior to signing the contract to purchase the 62 acres appellee or its agents did not notify appellant of its intention to build the athletic facilities although its agents knew that the acreage was located within appellant's boundaries. Appellee's attorney called upon appellant at a later date either to issue it a building permit, or to amend its zoning ordinance, or to deannex the acreage. Appellant refused appellee's proposals and notified appellee that the penal provisions of its ordinances would be enforced if construction began.

Sunset Valley, as a general law city, was authorized to enact and enforce zoning ordinances, "For the purpose of promoting health, safety, morals . . . or the general welfare of the community . . . ." Tex.Rev.Civ.Stat.Ann., Art. 1011a. This it has done. Appellee does not claim that appellant's zoning ordinance is invalid as not constituting a proper exercise of its police powers, and the judgment does not declare that the ordinance was unreasonable or arbitrary.

In support of the judgment appellee argues that upon a showing that its proposed construction was necessary to effectuate its constitutional duty of maintaining and operating a public free school system, appellant's zoning ordinance must yield. Appellee claims authority for this argument in Article VII, Section 1, of the Texas Constitution, Vernon's Ann.St. together with Sections 23.25, 23.26 and 23.31(a) of the Texas Education Code.

Article VII, Section 1 of the Texas Constitution provides:

"Section 1. A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Sections 23.25 and 23.26 read:

" § 23.25. Powers and Duties

"The board of trustees of an independent school district shall have the powers and duties described in this subchapter, in addition to any other powers and duties granted or imposed by this code or by law.

" § 23.26. In General

"(a) The trustees shall constitute a body corporate and in the name of the school district may acquire and hold real and personal property, sue and be sued, and receive bequests and donations or other moneys or funds coming legally into their hands.

"(b) The trustees shall have the exclusive power to manage and govern the public free schools of the district.

"(c) All rights and titles to the school property of the district, whether real or personal, shall be vested in the trustees and their successors in office.

"(d) The trustees may adopt such rules, regulations, and by-laws as they may deem proper."

" § 23.31. Eminent Domain

"(a) All independent school districts, except those covered in Section 17.26 of this Code, shall have the power by the exercise of the right of eminent domain to acquire the fee simple title to real property for the purpose of securing sites upon which to construct school buildings or for any other purpose which may be deemed necessary for the independent school district."

We fail to see that the general language of the quoted provisions of the Constitution and the Education Code immunizes independent school districts from the zoning authority of general law cities. We are further of the view that Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W.2d 330, (Tex.1964), is controlling. In that case an independent school district owned certain property within the boundaries of a home rule city, and claimed that it was not required to conform to certain building ordinances of the city making provision for the standards of construction, the obtaining of building permits, and the inspection of construction work while in progress. The Supreme Court held that school buildings of an independent school district are subject to the reasonable ordinances of the city.

As observed in Port Arthur Independent School District v. City of Groves, *supra,* the state has the dual responsibilities of both the education and the protection of the health and safety of its citizens. The state discharges its duty of education through local school districts and discharges its duties of protecting the health, safety and property of its citizens by delegating such to the municipalities.

In its second point of error appellant claims that once it is established that appellee is subject to its zoning authority,

then it should be found that appellee's proposed construction is not permitted by its ordinance. Section 6 of appellant's ordinance does contain a general reference to schools, ". . . facilitating the adequate provisions of . . . schools . . . ." We recognize that, as a general proposition, schools may be constructed in areas zoned for residential use. 3 Yokley, Zoning Law and Practice, § 28–58 (1967). The reason for permitting school construction in residentially zoned areas is that they should be placed within easy reach of the students who attend them. It is also thought that those persons who purchase lots to build homes in those areas are bound to realize that schools will be built nearby to accommodate children living there.

We are aware that the era of the one room school house with its playground in the adjoining woods has vanished, and that today schools have cafeterias, gymnasiums, playing fields, and other athletic facilities in conjunction with the classroom and laboratory buildings. Such accessory facilities may be located in residentially zoned areas. See Yancey v. Heafner, 268 N.C. 263, 150 S.E.2d 440 (N.C.Sup.Ct. 1966). But appellee's plan does not contemplate the character of construction which is permissibly located in residentially zoned areas. Its construction does not consist merely of a gymnasium and a football field and a baseball diamond, to be used by students in athletic and physical education programs, and ancillary to regular classroom buildings, but rather its design is solely to accommodate athletic contests for most of the schools in the school district and to provide a seating capacity for large, and presumably profitable, numbers of spectators, and to garage school buses from a large part of the district. The realization of such a plan would be contrary to the residential development provided by appellant's zoning ordinance.

The judgment is reversed and here rendered that appellee is subject to the zoning authority of appellant, and that the instant zoning ordinance does not permit appellee's projected construction.

Reversed and rendered.